**The below described is SIGNED.**



**Dated: May 8, 2014**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**LOUIS R. CHRISTENSEN,**<br><br>Debtor. | Bankruptcy Number: 11-30743<br><br>Chapter 7 |
| **DAVID C. WEST, as Chapter 7 Trustee,**<br><br>Plaintiff,<br><br>vs.<br><br>**MARLESE CHRISTENSEN,**<br><br>Defendant. | Adversary Proceeding No. 13-2248<br><br>Judge William T. Thurman |

## MEMORANDUM DECISION

The matter before the Court is the Motion for Summary Judgment filed by the Defendant, Marlese Christensen. David West, the Chapter 7 Trustee and Plaintiff, commenced this adversary proceeding by filing a complaint on July 11, 2013. In that complaint, the Plaintiff seeks to avoid, and recover for the benefit of the estate, an alleged fraudulent or preferential transfer that Louis

Christensen, the Debtor in the main bankruptcy case, made to the Defendant in January 2011, approximately six months before the Debtor filed his bankruptcy petition.

The Court conducted a hearing on the Defendant's motion on April 4, 2014, at which hearing David R. Williams appeared on behalf of the Plaintiff and Brent D. Wride appeared on behalf of the Defendant. The Court then took the matter under submission. After carefully considering the parties' briefs and the arguments of counsel, and after conducting an independent review of applicable law, the Court issued its ruling from the bench on April 14, 2014, making its findings of fact and conclusions of law on the record. The Court expressly reserved the right to issue a written memorandum decision memorializing and supplementing that oral ruling without changing its judgment. In accordance with that ruling, the Court now issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this matter by Federal Rules of Bankruptcy Procedure 9014 and 7052.

## I.    JURISDICTION AND VENUE

The Court's jurisdiction over this adversary proceeding is properly invoked under 28 U.S.C. § 1334(b) and § 157(a) and (b). The Plaintiff's complaint seeks to avoid and recover a fraudulent or preferential transfer, making this a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H). Venue is appropriately laid in this District under 28 U.S.C. § 1409, and notice of the hearing was properly given in all respects.

## II.   COMPLIANCE WITH LOCAL RULE 7056-1

Before addressing the Defendant's motion, the Court will address two issues related to Local Rule 7056-1. The first is the timeliness of the Plaintiff's memorandum in opposition. While the Defendant did not raise the issue at oral argument, she stated in the Notice of Hearing on

2

Defendant's Unopposed Motion for Summary Judgment that the Plaintiff had not filed a timely opposition to the motion for summary judgment.[1] In that notice, the Defendant observed that the Plaintiff had not filed an opposition by the initial deadline of January 6, 2014, nor by the January 15, 2014 extension agreed to by the Defendant.[2]

The Defendant's argument would be correct if the Court were operating under the version of the Local Rules in effect before December 1, 2013. Under the prior version of the Local Rules, a party opposing a motion for summary judgment had twenty-one days after service of the motion to file and serve a memorandum in opposition.[3] In this case, the Defendant filed her motion for summary judgment on December 13, 2013. Twenty-one days (plus three for mailing) from December 13, 2013 was January 6, 2014.[4] The Plaintiff did not file his memorandum in opposition until March 5, 2014.

The Plaintiff's opposition is not untimely, however, under the Local Rules that took effect on December 1, 2013, twelve days before the Defendant filed her motion for summary judgment.[5] Under the current version of the Local Rules, a memorandum in opposition to a motion for summary judgment must be filed "by the date stated in the Notice of Summary Judgment [Motion] and Notice of Hearing."[6] The Defendant did not file a Notice of Summary Judgment Motion and Notice of

---

[1] Docket No. 15, at 2.

[2] *Id.*

[3] Bankr. D. Ut. LBR 7056-1(c) (effective Dec. 1, 2012).

[4] *See* FED. R. BANKR. P. 9006(a).

[5] *See* Bankr. D. Ut. General Order No. 13-002.

[6] Bankr. D. Ut. LBR 7056-1(d) (effective Dec. 1, 2013).

3

Hearing. The Defendant did file a "Notice of Hearing on Defendant's Unopposed Motion for Summary Judgment," but not until February 11, 2014, and it did not set a date by which the Plaintiff had to file an opposition.

The current version of Local Rule 7056-1 provides that the party moving for summary judgment has the burden to set a specific objection deadline and provide notice of that deadline.[7] Because the Defendant did not file a Notice of Summary Judgment Motion and Notice of Hearing in compliance with that rule, there was never any deadline by which the Plaintiff had to file an opposition. Therefore, when the Plaintiff filed his opposition, it was not untimely.

The second issue regarding Local Rule 7056-1 is the Plaintiff's contention that the Defendant's motion does not comply with that rule. Again, this was an issue raised in the briefs, but not at oral argument. In particular, the Plaintiff argues that the Defendant's motion does not (1) list each legal element required for the Defendant to prevail; (2) cite to legal authority supporting each stated element; and (3) provide a concise statement of the material facts necessary to meet each element.[8]

A party moving for summary judgment must file a single document that contains the motion and any supporting memorandum.[9] The movant must also divide the document into discrete sections, including a section entitled "Statement of Elements and Undisputed Material Facts." Under that

---

[7] *See* Bankr. D. Ut. LBR 7056-1(c). Specifically, the party moving for summary judgment must, *inter alia*, file a Notice of Summary Judgment Motion and Notice of Hearing, which shall state a deadline to file an opposition that is at least twenty-one days after the Notice of Summary Judgment Motion and Notice of Hearing is served.

[8] Docket No. 16, Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 2–3.

[9] Bankr. D. Ut. LBR 7056-1(b).

section, the movant must (1) provide each legal element required to prevail on the motion; (2) cite to legal authority supporting each stated element (without argument); and (3) under each element, provide a concise statement of the material facts necessary to meet that element that the movant argues are not genuinely disputed.[10]

After examining the Defendant's motion and supporting memorandum, the Court concludes that they do not strictly comply with Local Rule 7056-1. The Court will not penalize the Defendant for non-compliance in this instance, however, as the rule only went into effect on December 1, 2013. The Court only cautions the parties to hew to the rule in the future.

## III.   FINDINGS OF FACT

The Court finds that, for the purposes of this motion, the following facts are undisputed:

1.      Louis Christensen, the Debtor in the main bankruptcy case, purchased real property at 1706 Bonita Bay Drive in St. George in 2010 (the "St. George Property").

2.      At the time of the purchase, the Debtor was married to the Defendant.

3.      In March 2010, the Debtor borrowed $120,000 from Bank of the West and induced the Defendant to offer property in Weber County, which was titled solely in her name, as collateral.

4.      In November 2010, the Debtor required the Defendant to move out of their residence, and on December 6, 2010, the Debtor filed a petition for divorce.

5.      On December 3, 2010, the Defendant filed a Notice of Interest in the Washington County Recorder's Office, which purported to create a $120,000 lien on the St. George Property, but the precise effect is not clear.

6.      On or about January 26, 2011, the Debtor sold the St. George Property to a third party.

---

[10] Bankr. D. Ut. LBR 7056-1(b)(2)(a)–(c).

7.      The Debtor included the sale on Question 10 of his Statement of Financial Affairs, indicating that the St. George Property was sold for $290,000, and that $120,000 of the sale proceeds were used to pay a secured creditor, but his response to Question 10 did not disclose the identity of the secured creditor.

8.      The $120,000 sum was paid to the Defendant through Terra Title Company on or about January 27, 2011.

9.      The Debtor and Defendant were still married at the time the St. George Property was sold and at the time the Defendant received the $120,000. Subsequent to that time, their divorce became final.

10.      On January 27, 2011, the Defendant released her Notice of Interest on the St. George Property by filing a Release of Notice of Interest.

11.      On January 29, 2011, the Defendant paid $109,381.05 to Bank of the West in satisfaction of the Debtor's loan.

12.      The Defendant incurred several thousand dollars in bank fees and attorney's fees in connection with that payment.

13.      The Debtor filed a voluntary petition under chapter 7 on July 22, 2011.

## IV.   DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court is required to grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] Substantive law determines which facts are

---

[11] FED. R. CIV. P. 56(a).

material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[12] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."[13] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[14]

The moving party bears the burden to show that it is entitled to summary judgment,[15] including the burden to properly support its summary judgment motion as required by Rule 56(c).[16] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[17] The nonmoving party may not rely solely on allegations in the pleadings, but must instead show "specific facts showing that there is a genuine issue for trial."[18]

When considering a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party,[19] but the Court does not weigh the evidence or make credibility determinations.[20]

---

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[13] *Id.*
[14] *Id.* at 249.
[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[16] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[17] *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).
[18] *Celotex*, 477 U.S. at 324.
[19] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).
[20] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Plaintiff's § 548(a)(1)(A) Claim

The Plaintiff's first claim for relief alleges actual fraud under 11 U.S.C. § 548(a)(1)(A).[21]

Section 548(a)(1)(A) provides that a trustee may avoid any transfer of an interest of the debtor in

property if the debtor, on or within two years prior to the date the petition was filed, made the

transfer with actual intent to hinder, delay, or defraud creditors.[22]

In general, "issues of motive and intent are ill-suited for resolution on summary judgment."[23]

There may be cases where intent can be resolved at the summary judgment stage,[24] but determining

intent typically requires a court to engage in the fact-finding process provided by trial. The Defendant

argues that the Debtor lacked the requisite intent as a matter of law because Bank of the West, a

creditor of the Debtor, was paid off as a result of the transfer.[25] Based on the record before it,

however, the Court concludes that there is a genuine dispute regarding the Debtor's intent to hinder,

delay, or defraud creditors when he transferred $120,000 to the Defendant through Terra Title

Company. Therefore, the Court will deny summary judgment on this claim.

---

[21] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated. The Plaintiff's first claim for relief also alleges claims under § 544 and Utah Code Annotated § 25-6-5. Because the Plaintiff's fourth claim for relief alleges claims under § 544 and Utah Code Annotated § 25-6-5, the Court will address those claims separately. *See infra*, Part D.
[22] § 548(a)(1)(A).
[23] *Mendenhall v. Koch Serv., Inc.*, Nos. 93-5072, 93-5073, 1994 WL 556893, at *3 (10th Cir. Oct. 12, 1994). *See also Larson v. Eney*, 741 F. Supp. 2d 459, 463 (S.D.N.Y. 2010) ("[S]ummary judgment is likely to be inappropriate where intent is at issue . . . ."); *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 636 (Bankr. S.D. Ohio 2006) ("Because the Debtor's subjective intent is in issue, summary judgment is generally not an appropriate mechanism for adjudication of an actual fraudulent transfer claim.").
[24] *See, e.g., Canyon Sys. Corp.*, 343 B.R. at 636–37 ("Actual intent to hinder, delay or defraud may be established as a matter of law in cases in which the debtor runs a Ponzi scheme . . . .").
[25] Docket No. 13, Memorandum in Support of Defendant's Motion for Summary Judgment, at 7–8.

*C. Plaintiff's § 548(a)(1)(B) Claim*

The Plaintiff's second claim for relief alleges constructive fraud under § 548(a)(1)(B). This provision is similar to § 548(a)(1)(A) in that it allows a trustee to avoid any transfer of an interest of the debtor in property where the debtor made the transfer on or within two years prior to the date the petition was filed. But unlike § 548(a)(1)(A), this provision does not have the element of intent. Instead, a party seeking to establish a claim under § 548(a)(1)(B) "must demonstrate a transfer or obligation was incurred for less than reasonably equivalent value and then must show one of the four conditions set forth in subsection (B)(ii) applies."[26]

The point of contention between the parties on summary judgment is whether the Debtor received reasonably equivalent value in return for the $120,000 he paid to the Defendant. The Bankruptcy Code does not define "reasonably equivalent value," but does provide that "value" means "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."[27] To determine reasonably equivalent value, a court must compare "the value of what the debtor received to the value of what the debtor transferred" at the time of the transfer.[28] "There is no minimum percentage or amount necessary to constitute reasonably equivalent value and the exchange of value need not be dollar-for-dollar."[29] The determination of reasonably equivalent value is a fact-intensive inquiry.[30]

---

[26] *Weinman v. Walker (In re Adam Aircraft Indus., Inc.)*, 493 B.R. 834, 845 (Bankr. D. Colo. 2013) (citation omitted).
[27] § 548(d)(2)(A).
[28] *Parks v. Persels & Assocs., LLC (In re Kinderknecht)*, 470 B.R. 149, 170 (Bankr. D. Kan. 2012) (citations omitted).
[29] *Id.* at 170.
[30] *Id.* at 169.

The Plaintiff argues that the Debtor did not receive reasonably equivalent value because he paid $120,000 to the Defendant, but the debt owed to Bank of the West was only $109,381.05, meaning the Debtor received $10,618.95 less than he paid.[31] The Defendant acknowledges that the payoff on the Bank of the West loan was less than the $120,000 transferred, but argues that there was still reasonably equivalent value in part because the Defendant was in effect reimbursed for the bank and attorney's fees she incurred in paying off the loan.[32]

The Court concludes that there is a genuine dispute as to whether the transfer was for reasonably equivalent value, and this issue will require further presentation of facts. Therefore, the Defendant's motion for summary judgment is denied as to the Plaintiff's § 548(a)(1)(B) claim.

### D. Plaintiff's § 544 Claims

The Plaintiff's third and fourth claims for relief are under § 544 and Utah Code Annotated § 25-6-5 and 25-6-6. "Section 544(b)(1) allows a trustee to step into the shoes of an actual creditor who could have avoided the transfer outside bankruptcy using a state-law cause of action."[33] In this case, the Trustee has alleged state-law causes of action under Utah's Uniform Fraudulent Transfer Act ("UFTA").[34] Section 25-6-5 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation; and the debtor:

---

[31] Docket No. 16, Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 15.
[32] Docket No. 13, Memorandum in Support of Defendant's Motion for Summary Judgment, at 8.
[33] *In re Equip. Acquisition Res., Inc.*, 742 F.3d 743, 744 (7th Cir. 2014).
[34] Utah's UFTA is codified at UTAH CODE ANN. § 25-6-1 *et seq*.

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.[35]

For the same reasons that the Court denied the Defendant's motion for summary judgment as to the § 548(a)(1)(A) and (a)(1)(B) claims, the Court denies it with regard to the claim under § 25-6-5. There are still genuine disputes of material fact regarding the Debtor's intent and the issue of reasonably equivalent value.

Section 25-6-6 provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if:

(a) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and

(b) the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation.

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent.[36]

The Court concludes that there are genuine disputes of material fact regarding the elements of the Plaintiff's claim under § 25-6-6, and the Court accordingly denies the Defendant's motion for summary judgment as to that claim.

---

[35] UTAH CODE ANN. § 25-6-5(1) (2014). For purposes of § 25-6-5(1)(b) and § 25-6-6, "a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement." UTAH CODE ANN. § 25-6-4(2) (2014).
[36] UTAH CODE ANN. § 25-6-6 (2014).

*E. Plaintiff's § 547 Claim*

The Plaintiff's fifth claim for relief alleges a preferential transfer under § 547, which allows a trustee to avoid any transfer of an interest of the debtor in property if, *inter alia*, the transfer occurred on or within ninety days before the date the petition was filed or, if made to an insider of the debtor, within one year before the date the petition was filed.[37] If a trustee is successful in avoiding the preference, § 550(a), which is the Plaintiff's sixth and final claim for relief, allows the trustee to recover the transferred property for the benefit of the estate.[38]

The transfer at issue in this case occurred on or about January 27, 2011, which was outside of the ninety-day window, but within one year before the Debtor filed his bankruptcy petition. Therefore, the Trustee can only avoid the transfer if the Defendant qualifies as an insider. There are two types of insiders: per se or statutory insiders, who are specifically mentioned in the statute, and non-statutory insiders, who, despite not being mentioned in § 101(31), nevertheless fall within the ambit of that subsection because they have a "sufficiently close relationship with the debtor that [their] conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor."[39]

The Defendant first argues that the Plaintiff's § 547 claim must fail as a matter of law because the Defendant was not an insider. In support of this argument, the Defendant asserts that she and the Debtor were in an adversarial relationship at the time of the transfer and she did not have the

---

[37] § 547(b)(4).

[38] *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1254 (10th Cir. 2008).

[39] *Miller Ave. Prof'l & Promotional Servs., Inc. v. Brady (In re Enter. Acquisition Partners, Inc.)*, 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004) (quoting *Sticka v. Anderson (In re Anderson)*, 165 B.R. 482, 485 (Bankr. D. Or. 1994)). *See also Redmond v. CJD & Assocs., LLC (In re Brooke Corp.)*, 506 B.R. 560, 565 (Bankr. D. Kan. 2014) (citation omitted).

12

ability to exercise undue influence over the Debtor.[40] In addition, the Defendant argues that she did not receive the $120,000 in order to shelter or protect it for the Debtor.[41]

These arguments regarding the adversarial nature of the relationship and the extent of the Defendant's influence over the Debtor are germane to determining whether a transferee may be considered a non-statutory insider despite not meeting the per se definition. The criteria courts employ to assist them in this determination include "the closeness of the parties and the degree to which the [transferee] is able to exert control or influence over the debtor,"[42] and "whether the transactions between the transferee and the debtor were conducted at arm's length."[43]

The Defendant's arguments, however, are not relevant to determining whether a transferee is a per se insider, one "whose affinity or consanguinity gives rise to a conclusive presumption that the individual or entity commands preferential treatment by the debtor."[44] A transferee's status as a per se insider is governed by reference to the definitions supplied by the statute. "Once the defendant is statutorily defined as an 'insider' the inquiry stops. After that point, there is no reason to determine the degree of control."[45] Similarly, "when the transferee is a per se insider, the court does not need to examine the actual nature of the relationship. The per se insider is considered to be close enough to the debtor to demand preferential treatment as a matter of law, regardless of whether

---

[40] Docket No. 13, Memorandum in Support of Defendant's Motion for Summary Judgment, at 9.
[41] Docket No. 17, Reply Memorandum in Support of Defendant's Motion for Summary Judgment, at 6.
[42] *Sherron Assocs. Loan Fund XXI (Lacey) L.L.C. v. Thomas (In re Parks)*, 503 B.R. 820, 833 (Bankr. W.D. Wash. 2013) (citing *Enter. Acquisition Partners*, 319 B.R. at 633 n.5)).
[43] *Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 833 (Bankr. N.D.N.Y. 2010) (citing *Hirsch v. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002)). *Accord OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 523–24 (Bankr. D. Del. 2006) (citations omitted).
[44] *Brooke Corp.*, 506 B.R at 565–66 (quoting *Rupp v. United Sec. Bank (In re Kunz)*, 489 F.3d 1072, 1078–79 (10th Cir. 2007)).
[45] *Venn v. Purcell (In re Winn)*, 127 B.R. 697, 699 (Bankr. N.D. Fla. 1991).

the insider has any actual control over the actions of the debtor."[46] Accordingly, the factors argued by the Defendant should only be considered if a transferee does not meet the per se definition of an insider.

Here, it is undisputed that the Defendant was married to the Debtor at the time of the transfer, which, according to the Plaintiff, would make her an insider per se. Therefore, the Court must first address whether the Defendant meets the statutory definition of an insider. Where the debtor is an individual, an insider includes a "relative of the debtor,"[47] and a relative is, among other things, an "individual related by affinity or consanguinity within the third degree as determined by the common law."[48]

The Defendant's argument is that spouses are related by marriage, but not by affinity, thereby excluding a debtor's spouse from insider status. The Defendant cites Black's Law Dictionary for the proposition that "affinity" means a "relation that one spouse has to the blood relatives of the other spouse." The Defendant further asserts that if Congress had wanted to include a debtor's spouse in the definition of relative, it should have provided that relatives are those related by consanguinity, affinity, or marriage. The Defendant argues that state legislatures know the distinctions among the three categories, but Congress left a hole in the Bankruptcy Code when it left out "marriage" from the definition of "relative."

---

[46] *Enter. Acquisition Partners*, 319 B.R. at 631 (internal citations and quotation marks omitted). *See also Gold v. Rubin (In re Harvey Goldman & Co.)*, No. 11-04829-PJS, 2011 WL 3734912, at *3 (Bankr. E.D. Mich. Aug. 24, 2011) ("The issue then in cases involving a relative is not whether a relative is in such position to influence and control the debtor's conduct. Congress has already made that determination.").

[47] § 101(31).

[48] § 101(45).

The Defendant also cites *In re Busconi*,[49] where the court concluded that a debtor's spouse was not a relative under § 101(45) because statutes of descent and distribution do not consider spouses to be related by affinity. The court made this determination despite a contrary indication from the legislative history that Congress intended that spouses be considered relatives under the Bankruptcy Code.[50] Not all courts concur with the conclusion reached in *Busconi*, however. One court has stated that the decision in *Busconi* was based in part on statutes of descent and distribution that were "likely drafted with different policy objectives than those used in drafting the Bankruptcy Code."[51]

The determination of whether a debtor's spouse is an insider of the debtor requires this Court to engage in statutory interpretation, whose core principle demands that courts look at the language of the statute at the outset.[52] If the language is clear and unambiguous, the plain meaning controls.[53] But where the statutory text is ambiguous, meaning it is "capable of being understood by reasonably well-informed persons in two or more different senses," the Court must inquire further to discern congressional intent.[54] Moreover, "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."[55]

---

[49] *Barnhill v. Vaudreuil (In re Busconi)*, 177 B.R. 153 (Bankr. D. Mass. 1995).

[50] *Id.* at 157.

[51] *Sumski v. Daggett (In re Hoxie)*, No. 02-1127-JMD, 2003 WL 21991631, at *3 (Bankr. D.N.H. July 24, 2003).

[52] *See, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (citation omitted).

[53] *Id.*

[54] *Dill Oil Co. v. Stephens (In re Stephens)*, 704 F.3d 1279, 1283 (10th Cir. 2013) (citing *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002)).

[55] *Robbins v. Chronister*, 402 F.3d 1047, 1050 (10th Cir. 2005) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982)).

15

"When a statute does not define a term, [courts] typically give the phrase its ordinary meaning."[56] The Bankruptcy Code does not define "affinity," so this Court will turn to the ordinary meaning of the term. Some cases, including *Busconi*, have interpreted § 101(45) to require that the definition of affinity be "determined by the common law."[57] This Court, however, believes that the language and structure of § 101(45), along with related advisory committee notes, reveal that the common law determines whether an individual is related within the third degree, while affinity should be given its ordinary meaning without reference to the common law.

First, the text of § 101(45) defines a relative as an "individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship *within such third degree*."[58] The definition exhibits a parallel structure in two parts, which are divided by a comma. The phrase "such third degree" is a shorthand reference for "the third degree as determined by the common law." Although shortened, the phrase retains the same meaning that it has in its longer form in the first part of § 101(45). Therefore, given the parallel structure of § 101(45), the long and short forms of the phrase should apply equally to the first and second parts of the definition. In other words, if affinity is determined by reference to the common law, then it must be the case that step and adoptive relationships are likewise determined by reference to the common law. But that is an unsupportable argument because "adoption is unknown

---

[56] *FCC v. AT & T Inc.*, 562 U.S. ----, ----, 131 S. Ct. 1177, 1182 (2011) (citation and internal quotation marks omitted).

[57] *See Busconi*, 177 B.R. at 157 ("A relationship by affinity, under either the common law or civil law, is the relationship enjoyed between one spouse and the blood relatives of the other spouse."); *Zakroff v. Markson (In re Ribcke)*, 64 B.R. 663, 666 (Bankr. D. Md. 1986) ("The doctrine of affinity, derived from both canon and common law, states that husband and wife are united by marriage and become one person.").

[58] § 101(45) (emphasis added).

16

to the common law."[59] It is a contradiction in terms to define by reference to the common law a concept that had no existence at common law.[60] Therefore, it makes more sense to limit the application of the common law to determining degrees of relatedness.

Second, the advisory committee note to Rule 5002, which prescribes restrictions on the appointment of relatives, supports the interpretation that the common law supplies the definition for what "within the third degree" means, but not for what affinity means. After quoting the text of what was then § 101(34), which was subsequently redesignated as § 101(45), the advisory committee note lays out which persons are related by the first, second, and third degree under the common law system.[61] That the advisory committee note limits the application of the common law to determining the degrees of relatedness suggests that affinity is not determined by reference to the common law.

Accordingly, the Court concludes that it is appropriate to give affinity its ordinary meaning. While Black's does define affinity as "the relation that one spouse has to the blood relatives of the other spouse," it also defines it as "relationship by marriage" and "any familial relation resulting

---

[59] *Nichols v. Nichols*, 20 F.2d 474, 476 (8th Cir. 1927). *See also In re Thorne's Estate*, 49 N.E. 661, 663 (N.Y. 1898) ("The adoption of children and strangers to the blood was known to the Athenians and Spartans, the Romans and ancient Germans. . . . This form of domestic relation was, however, unknown to the common law of England, and exists in this country only by virtue of statute.").

[60] This conclusion is dependent on the meaning of "common law" approximating "the body of law derived from judicial decisions, rather than from statutes or constitutions." BLACK'S LAW DICTIONARY 270 (7th ed. 1999). The Bankruptcy Code does not define "common law," but, according to principles of statutory interpretation, it should mean something different from state law, local law, or applicable nonbankruptcy law. *See Abbott v. Abbott*, 560 U.S. 1, 33 (2010) ("In interpreting statutory text, [courts] ordinarily presume that the use of different words is purposeful and evinces an intention to convey a different meaning."). Congress has used those latter three terms in various parts of the Code. *E.g.*, *Gold v. Rubin (In re Harvey Goldman & Co.)*, No. 11-04829-PJS, 2011 WL 3734912, at *9 n.3 (Bankr. E.D. Mich. Aug. 24, 2011). Therefore, the Court concludes that "common law" should be given a meaning distinct from those assigned to state law, local law, or applicable nonbankruptcy law.

[61] FED. R. BANKR. P. 5002 advisory committee note (1983).

17

from a marriage."[62] The second and third definitions seem to be in tension with the first. Webster's

Second New Riverside University Dictionary defines affinity as "relationship by marriage,"[63] as does

the Second College Edition of the American Heritage Dictionary.[64] In addition, the Second Edition

of Garner's Dictionary of Modern Legal Usage defines affinity as "relationship by marriage."[65] That

definition, along with the third one offered by Black's, would seem to include the relationship

between spouses. That proposition finds support in *Collier's*, which states that "[t]he definition of

'relative' does not explicitly state 'and shall include the spouse' . . . . The phrase is unnecessary as

an 'individual related by affinity' describes an individual related by marriage—thus, the individual's

spouse, is, of course, included [in the definition of relative]."[66]

Therefore, while the Defendant's argument that relationship by affinity does not include

one's spouse finds support in Black's, the very source on which the Defendant relies also offers

contrary authority. Based upon the conflicting definitions found in the above-described dictionaries,

the Court concludes that "affinity," as used in § 101(45), is capable of being understood by

reasonably well-informed persons in two or more different senses, and therefore ambiguous. The

Court must look beyond the plain meaning of the statutory text to determine Congress's intent.

The legislative history on the Bankruptcy Reform Act of 1978 contains a statement on point.

The House and Senate reports provide that "a former spouse is not a relative, but if, [for purposes

of § 547], the transferee was a spouse of the debtor at the time of the transfer sought to be avoided,

---

[62] BLACK'S LAW DICTIONARY 59 (7th ed. 1999).

[63] WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 83 (1984).

[64] AMERICAN HERITAGE DICTIONARY SECOND COLLEGE EDITION 84 (2d ed. 1982).

[65] BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 35 (2d ed. 1995).

[66] 2 COLLIER ON BANKRUPTCY ¶ 101.45 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).
*Collier's* also states that "'affinity' as used in section 101(45) refers to the relationship that arises
from the marriage between each spouse and the consanguineal relatives of the other. Thus, each
spouse is related by affinity to the blood relatives of the other in the same way the other is related
to them by blood." *Id.*

then the transferee would be [a] relative and subject to the insider rules . . . ."[67] This statement from the legislative history clearly indicates that a spouse of a debtor is related to the debtor by affinity and therefore an insider as defined in § 101(31).

Moreover, the result that the Defendant urges would produce an absurd result at odds with the legislative purpose of § 547. The term "insider" was new to the Bankruptcy Reform Act of 1978 and it describes "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms [sic] length with the debtor."[68] Congress's concern with transfers made to such persons is demonstrated by the creation of a preference period applicable to insiders that reaches back one year from the date the petition was filed. "[T]he reason for the extended preference period is that insiders are far more likely to be given preferential treatment in debt repayment than creditors who deal with the debtor at arm's length."[69] It would appear to be at cross purposes with the statute if a trustee could avoid a transfer between a debtor and the debtor's spouse's uncle eight months before the petition date on the basis of affinity, but not a transfer between the debtor and the spouse. A spouse is typically in a much closer relationship with the debtor than relatives farther afield, and a spouse is precisely the person, transfers to whom should raise concerns that they may not have been made at arm's length.

The Court's conclusion that relationship by affinity includes one's spouse is buttressed by case law. In the case of *In re Paschall*, the court held that the debtor's then-current spouse was related to the debtor by affinity and therefore an insider of the debtor.[70] To support that proposition,

---

[67] H.R. REP. NO. 95-595, at 313 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6270; S. REP. NO. 95-989, at 26 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5811.

[68] H.R. REP. NO. 95-595, at 312 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6269.

[69] *Anstine v. Carl Zeiss Meditec AG (In re U.S. Med., Inc.)*, 531 F.3d 1272, 1276 n.2 (10th Cir. 2008) (quoting *Hirsch v. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 260 (Bankr. S.D.N.Y. 2002)).

[70] *Prunty v. Terry (In re Paschall)*, 408 B.R. 79, 86–87 (E.D. Va. 2009).

19

the *Paschall* court cited to *Miller v. Schuman*, a case wherein the Ninth Circuit Bankruptcy Appellate Panel stated that a "spouse of a debtor is a relative as defined by [then] section 101(39) because the definition includes individuals 'related by affinity'."[71] The Tenth Circuit Court of Appeals also cited to *Schuman* briefly in the case of *Rupp v. United Security Bank*.[72] There, the Tenth Circuit stated that "one court [which was the Ninth Circuit BAP in *Schuman*] has held that a former spouse is not a relative of the debtor (and so not an insider per se) within the meaning of the Bankruptcy Code, although a spouse clearly is a relative and thus an insider."[73]

Counsel have acknowledged that these statements made by the Ninth Circuit BAP and the Tenth Circuit are dicta. This Court is not bound by Tenth Circuit dicta, but dicta can be persuasive.[74] In addition, this Court is not bound by the decisions or dicta of the Ninth Circuit BAP, but again, they can be persuasive.

The Court concludes that the *Paschall*, *Schuman*, and *Kunz* cases, in conjunction with the text of the statute, the legislative history underlying the Bankruptcy Reform Act of 1978, and the congressional purpose behind § 547, offer persuasive support for the conclusion that a debtor's spouse is related to the debtor by affinity and therefore a per se insider of the debtor under the Bankruptcy Code. Because the Defendant does not dispute that the Defendant and Debtor were married at the time of the transfer, the Court will deny the Defendant's motion for summary judgment on the issue of whether the Defendant was an insider of the Debtor.

The Defendant also argues that the Plaintiff's § 547 claim must fail because the undisputed facts show that the transfer was not "for or on account of an antecedent debt owed by the debtor" to

---

[71] *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 585 (B.A.P. 9th Cir. 1987).
[72] *Rupp v. United Sec. Bank (In re Kunz)*, 489 F.3d 1072 (10th Cir. 2007).
[73] *Id*. at 1078.
[74] *See, e.g., United States v. Ganadonegro*, 854 F. Supp. 2d 1088, 1124 (D.N.M. 2012) (citing *Bates v. Dep't of Corr. of State of Kan.*, 81 F.3d 1008, 1011 (10th Cir. 1996)).

the Defendant, but rather to Bank of the West.[75] In short, the Defendant argues that the Plaintiff should be pursuing Bank of the West. Of course, the transfer occurred more than ninety days prepetition, and Bank of the West is not alleged to be an insider of the Debtor, precluding the Trustee from pursuing Bank of the West under § 547(b). In response, the Plaintiff argues that the Debtor's fraud against the Defendant—committed when he induced her to offer her property in Weber County as collateral for the loan with Bank of the West—created an antecedent debt, and the Debtor paid her $120,000 on account of that debt.[76]

The Court concludes that there is a genuine dispute regarding whether the transfer was made on account of an antecedent debt owed to Bank of the West or the Defendant. Therefore, the Court will deny the Defendant's motion for summary judgment on this issue as well.

## V.    CONCLUSION

The Defendant has argued that she should be granted summary judgment on the Plaintiff's claims because the Plaintiff cannot prove essential elements of those claims as a matter of law. The Court concludes that there are genuine disputes of material fact regarding those challenged elements, and accordingly, the Court denies the Defendant's motion for summary judgment.

_____END OF DOCUMENT_____

---

[75] Docket No. 13, Memorandum in Support of Defendant's Motion for Summary Judgment, at 10.
[76] Docket No. 16, Memorandum in Opposition to Defendant's Motion for Summary Judgment, at 11–12.

_____ooo0ooo_____
### SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

David R. Williams
Reid W. Lambert
David A. Nill
WOODBURY & KESLER, P.C.
525 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT 84110-3358
*Attorneys for Plaintiff*

Brent D. Wride
RAY QUINNEY & NEBEKER P.C.
36 South State Street, 14th Floor
P.O. Box 45385
Salt Lake City, UT 84145-0385
*Attorney for Defendant*