**This order is SIGNED.**

**Dated: November 4, 2016**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>LOUIS R. CHRISTENSEN,<br><br>                              Debtor. | Bankruptcy Number: 11-30743<br><br>Chapter 7 |
| DAVID C. WEST, Chapter 7 Trustee,<br><br>                              Plaintiff,<br>vs.<br><br>MARLESE CHRISTENSEN,<br><br>                              Defendant. | Adversary Proceeding No. 13-02248<br><br>Judge William T. Thurman |

## MEMORANDUM DECISION

### I.    INTRODUCTION

This matter comes before the Court on the Trustee's motion for summary judgment and

the Defendant's cross-motion for summary judgment. Louis Christensen ("Debtor") filed for

chapter 7 bankruptcy on July 22, 2011. The Trustee filed a complaint on July 11, 2013 against

Defendant Marlese Christensen ("Defendant"), the Debtor's former wife, to recover an alleged

fraudulent transfer or a preferential transfer in the amount of $120,000.

A hearing on the second motion for summary judgment was conducted on May 5, 2016.

At that hearing, the Court questioned the impact of the divorce court's division of marital

property on this proceeding and requested the parties to brief how the Rooker-Feldman doctrine

or res judicata may affect this Court's ruling. The parties submitted briefs, and the Court deems

further oral argument to be unnecessary. After considering the arguments of counsel, and

conducting an independent review of the law, the Court makes the following findings of fact and

conclusions of law.

## II.    JURISDICTION AND VENUE

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. This is a core

proceeding within the meaning of  28 U.S.C. § 157(b)(2)(F) and (H) and this Court may enter a

final order.  Venue is proper under the provisions of 28 U.S.C. § 1408 and 1409.

## III.    RELEVANT FACTS

Debtor and Defendant were married. It was a second marriage for both of them, and they

came into the marriage owning separate property that would remain separate according to a

prenuptial agreement. In March 2010, while married, they purchased a home on Bonita Bay

Drive in St. George from the Debtor's secretary that they used as a marital residence (the "Bonita

Bay Property"). They purchased the property together with a down payment in excess of $40,000.

2

The Debtor and the Defendant put another $40,000 into the home for landscaping and remodeling in the nine or ten months that they owned it. The Defendant received regular income from a charitable remainder trust established by her parents, which she used to pay household expenses, to help pay rent and mortgage payments, and for the upkeep of the home. The Defendant also earned money doing makeup and facials for clients, which she contributed to the household. The Debtor could not make a substantial contribution to the household because he was struggling with health issues. The Debtor's dental license was suspended on April 26, 2010, only eight weeks after they purchased the home, which further reduced his ability to pay any expenses for the home.

The Debtor acquired title to the Bonita Bay Property from his secretary on March 1, 2010. A few weeks after the purchase, the Debtor gave the Defendant signature pages to sign that he untruthfully said would put her on the title to the Bonita Bay Property. One of the papers the Defendant signed was actually a Quit Claim Deed granting the Debtor an ownership interest in a home in Weber County that belonged solely to the Defendant under the prenuptial agreement. The other paper was a Deed of Trust that allowed the Debtor to get a line of credit from Bank of the West for up to $120,000, using the Defendant's Weber County home as collateral. The Debtor had the signatures notarized later, when the Defendant was not present.

When the Defendant learned of this loan about six months later, she contacted a lawyer for assistance. In response, on November 3, 2010, the Debtor told the Defendant to move out. On December 6, 2010, the Debtor filed for divorce and put the Bonita Bay Property up for sale. It was at this point that the Defendant discovered that she was not on the title to the home. The

3

Defendant's divorce attorney recorded a Notice of Interest against the Bonita Bay Property to let

any purchaser know that she claimed an interest in it "by virtue of [her] marital interest in said

home and real property."

The Bonita Bay Property sold in January 2011 for $290,000. The proceeds of the sale

were paid to Terra Title Company, and the funds went into its bank account. On January 26,

2011, the Defendant signed a release of her Notice of Interest in the Bonita Bay Property, which

enabled the Debtor to receive a partial share of the proceeds from the sale of the Bonita Bay

Property. On January 27, 2011, Terra Title Company issued a check to the Defendant for

$120,000, which she used to pay off the Debtor's loan with Bank of the West that encumbered

her home in Weber County. The payoff amount was $109,381.05.

The Debtor filed a chapter 7 bankruptcy petition on July 22, 2011, about six months after

the sale of the Bonita Bay Property.

## IV.    PROCEDURAL HISTORY

The Trustee filed a complaint on July 11, 2013 against the Defendant seeking to recover

the $120,000 paid to her after the sale of the Bonita Bay Property as an alleged fraudulent

transfer under 11 U.S.C. § 548(a)(1)(A) and (B), as well as under 11 U.S.C. § 544[1] and Utah

Code Ann. § 25-6-5 and 6. The Trustee sought to avoid the same transaction as a preferential

transfer under § 547, and to recover the payment from the Defendant under § 550.

---

[1]All subsequent statutory references are to Title 11 of the United States Code unless
otherwise indicated.

4

The Defendant's first motion for summary judgment was denied because there were genuine issues of material fact in dispute. After fact discovery closed, Defendant filed a second motion for summary judgment. The motion for summary judgment was granted in part on all claims involving fraud, and the Trustee's claims for relief under § 548 were dismissed. Summary judgment was denied as to the claims based on allegations of a preferential transfer under § 547.

The Defendant requested relief from the automatic stay to allow her and the Debtor to return to the divorce court and litigate the division of their marital property and the Defendant's interest in the $120,000 that was transferred to her. The Trustee expressed an intent to participate in that litigation, though he later decided not to participate in the divorce court action. Relief from stay was granted on August 11, 2015.

On January 8, 2016, the divorce court awarded each party one-half of the marital assets, and this decision was further memorialized in the Findings of Fact, Conclusions of Law, and Final Judgment entered on August 11, 2016 (the "Divorce Court Property Division"). When this was reported to the bankruptcy court, the Defendant suggested that the Divorce Court Property Division disposed of the matter, but the Trustee still questioned whether or not the Defendant had an ownership interest in the money transferred to her as a result of the sale of the Bonita Bay Property. The Trustee filed a third motion for summary judgment, and this is the matter currently before the Court as well as the Defendant's cross motion.

At this point in the adversary proceeding, the threshold issue for deciding the Trustee's remaining preferential transfer claim is whether or not the $120,000 transferred to the Defendant belonged to the Defendant or the Debtor. A trustee may only avoid a "transfer of an interest of

the debtor in property."[2] If the proceeds from the sale of the Bonita Bay Property were solely the

Debtor's property, then there is a possibility that a preferential transfer took place. However, if

the Defendant received a return of her own property when she received the $120,000 payment,

then the threshold would not be met and the transfer would not be considered a preference under

§ 547. There are no material facts in dispute, and so summary judgment is appropriate.

## V.    DISCUSSION

"For the purposes of most bankruptcy proceedings, property interests are created and

defined by state law. Once that state law determination is made, however, [the Court] must still

look to federal bankruptcy law to resolve the extent to which that interest is property of the

estate."[3] As stated in the Relevant Facts, the Debtor filed for divorce in December 2010. At that

point, the Bonita Bay Property had not yet been sold, and its ownership and division was within

the jurisdiction of the divorce court. The divorce was not yet finalized when the Debtor filed a

bankruptcy petition in July 2011, which stayed the divorce court's decision about property

division. The automatic stay does not halt a divorce proceeding "except to the extent that such

proceeding seeks to determine the division of property that is property of the estate."[4] The

divorce court postponed its division of property by entering an Order Bifurcating Divorce on

---

[2]11 U.S.C. § 547(b).

[3]*Marshall v. FIA Card Services, N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008); *see also Butner v. United States,* 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

[4]11 U.S.C. § 362(b)(2)(A)(iv).

April 11, 2013, which reserved issues regarding property division due to the pending bankruptcy case.

On the date the bankruptcy petition was filed, the bankruptcy estate received the "legal or equitable interests of the debtor in property."[5] While this Court has jurisdiction over property of the bankruptcy estate, the determination of a Debtor's ownership interest in property may be made by another court. And that is the approach this Court decided to take when it lifted the automatic stay and sent the parties back to the divorce court to litigate the division of the marital assets. The divorce court awarded each spouse the property he or she brought into the marriage, and then equally divided the marital property. After balancing the value of the property, the divorce court awarded Defendant $148,066.88 from the proceeds of the sale of the Bonita Bay Property.

The Trustee asks this Court to rule that the award of sale proceeds under the divorce decree is an avoidable preference, arguing that the Defendant did not own the asset that was sold, and so her right to a share of the property settlement in the divorce is merely the claim of a creditor and not an award of property in which she had an ownership interest. The Trustee also argues that the divorce court did not rule on the specific issue of title ownership of the Bonita Bay Property, and so consideration of these claims by this Court is not barred by either the

---

[5] 11 U.S.C. § 541(a).

7

Rooker-Feldman[6] doctrine, or by res judicata. The Court concludes that Rooker-Feldman does not apply in this case, but that the Trustee's claims are barred by issue preclusion.

### A.     The Rooker-Feldman doctrine

To determine whether the Rooker-Feldman doctrine applies to the Trustee's claim, the Court focuses on the relief sought by the Trustee.[7] Relief which attacks or seeks to nullify a state court order would be barred by the Rooker-Feldman doctrine.

In this case, the Trustee does not seek to vacate or nullify the Divorce Court Property Division. Instead, the Trustee asks this Court to determine that the Defendant did not have an ownership interest in the Bonita Bay Property based on the irregularity in title ownership, i.e., the Defendant believed she was on the title but, due to the Debtor's fraud, she was not. "Rooker-Feldman does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court

---

[6]The Rooker-Feldman doctrine is drawn from two cases: *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The Supreme Court recently clarified the narrow scope of the *Rooker–Feldman* doctrine, stating that it is 'confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

[7]*See Lawrence v. Flanders (In re Flanders)*, 2016 WL 4176843 at *5 (10th Cir. 2016) ("To determine the applicability of the *Rooker-Feldman* doctrine, we focus on the relief sought by Mr. Flanders.") (relying on *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010)).

proceedings or judgment."[8] The Trustee seeks relief that is inconsistent with the Divorce Court

Property Division, but that, in itself, will not trigger application of the Rooker-Feldman doctrine.[9]

## B.    Res Judicata

"To determine the preclusive effect of a state-court judgment in a later federal action, we

look to the preclusion law of the forum state."[10] The Utah Supreme Court has explained that

"There are 'two branches of the judicially created doctrine known as res judicata': claim

preclusion and issue preclusion. 'Claim preclusion corresponds to causes of action; issue

_____

[8]*Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1145 (10th Cir. 2006); *see also Lawrence v. Flanders (In re Flanders)*, 2016 WL 4176843 at *6 (10th Cir. 2016) (relying on *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) (stating that a federal claim is not precluded by the *Rooker-Feldman* doctrine solely because the claim requests relief inconsistent with a state-court judgment)).

[9]The Tenth Circuit gave an example to illustrate this distinction in *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006):

> To illustrate, say a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by Rooker–Feldman; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings. If, however, the father simply brought suit in federal court seeking custody of his child, without raising any complaint about the state-court proceedings, Rooker–Feldman cannot be invoked; his federal claim would have been the same even in the absence of the state-court judgment. A myriad of doctrines, including res judicata, would almost certainly bar the suit. But because he is not seeking to overturn the state-court judgment, Rooker–Feldman is inapplicable, regardless of whether a favorable judgment in federal court would be inconsistent with that judgment and would deny a legal conclusion that the state court has reached. Here, the allegations underlying Mr. Bolden's federal claim would be identical if there had been no state-court proceeding. He is not seeking to undo the state-court judgment.

*Id*. at 1145 (internal quotations and citations omitted).

[10]*Flanders v. Lawrence (In re Flanders)*, 2016 WL 4176843 at *8 (10th Cir. 2016).

9

preclusion corresponds to the facts and issues underlying causes of action.'"[11] Claim preclusion

does not apply in this situation because the preferential transfer claim under 11 U.S.C. § 547 can

only be brought in bankruptcy court and could not have been raised in the state divorce court

action.[12] However, questions about property ownership are questions of fact, and so issue

preclusion may apply. Issue preclusion includes four elements:

> "Issue preclusion applies only when the following four elements are satisfied: (i) the party
> against whom issue preclusion is asserted was a party to or in privity with a party to the
> prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one
> presented in the instant action; (iii) the issue in the first action was completely, fully, and
> fairly litigated; and (iv) the first suit resulted in a final judgment on the merits."[13]

The Court will discuss each element in turn.

### 1.    "The party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication."

The Defendant asserts issue preclusion against the Trustee. The Trustee was in privity

with the Debtor through the portion of the divorce proceeding in which the property was divided.

This element is satisfied.

---

[11]*Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1163 (Utah 2012)
(internal citations omitted).

[12]"Claim preclusion applies only when the following three elements are satisfied: (1) both
suits must involve the same parties or their privies, (2) the claim that is alleged to be barred must
have been presented in the first suit or be one that could and should have been raised in the first
action, and (3) the first suit must have resulted in a final judgment on the merits." *Id.* Because the
preferential transfer claim under the Bankruptcy Code could not and should not have been raised
in the state court that handled the divorce, claim preclusion does not apply.

[13]*Id.* at 1164 (Utah 2012) (internal quotation marks omitted); *see also Moss v. Kopp*, 559
F.3d 1155, 1161 (10th Cir. 2009).

2.    **"The issue decided in the prior adjudication was identical to the one
presented in the instant action."**

The issue before the divorce court was ownership of the Bonita Bay Property and/or its

proceeds of sale. The issue before this Court is also ownership of the Property. The divorce court

applied equitable considerations to determine property ownership. The Trustee argues that this

Court should apply the legal principles of title ownership to the factual question of property

ownership. This distinction does not prevent issue preclusion from applying. "[T]he applicability

of issue preclusion does not depend on whether the claims for relief are the same. What is critical

is whether the *issue* that was actually litigated in the first suit was essential to resolution of that

suit and is the same factual issue as that raised in the second suit."[14] The Trustee's competing

legal basis to decide ownership of the Property does not change the fact that the factual issue of

ownership of the Property was the issue in both cases. This element is satisfied.

### 3. **"The issue in the first action was completely, fully, and fairly litigated."**

The Defendant came to this Court for permission to lift the automatic stay to litigate the

issue of ownership of the Property in the state divorce court. The Trustee's attorney was present

during that hearing and expressed his intention to intervene in the state divorce court proceeding

to represent the bankruptcy estate's interests. The Trustee later elected not to participate.[15] The

---

[14]*Fowler v. Teynor*, 323 P.3d 594, 597 (Utah Ct. App. 2014), *reh'g denied* (May 8, 2014),
*cert. denied*, 333 P.3d 365 (Utah 2014) (internal citations and quotation marks omitted)
(emphasis in original).

[15]*See* Supplemental Memorandum In Support of Plaintiff David C. West's Second
Motion for Partial Summary Judgment, filed July 20, 2016 at Dkt. No. 60 at p. 12. "The Trustee
considered petitioning the Utah State Court to intervene as a party-in-interest, but when he saw

Debtor approached the state court and it made the determination of property ownership in the

context of an unopposed motion for summary judgment. It might be argued that the Trustee's

non-involvement in the hearing for summary judgment before the Divorce Court defeats the

application of issue preclusion. However, the Trustee was aware of the motion of the Defendant

in the Divorce Proceeding and made a conscious election not to participate. "An 'issue is actually

litigated' when it 'is properly raised ... and is submitted for determination, and is determined.'"[16]

The summary judgment proceedings in the state divorce court constituted a 'complete, full, and

fair litigation' of the first action, despite the Trustee's decision to bypass participation.

### 4. "The first suit resulted in a final judgment on the merits."

"In the context of res judicata, 'merits' has been interpreted to mean real or substantial

grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or

form."[17] Under this standard, summary judgment is a final judgment on the merits. The state

divorce court considered the facts and the law, and determined the respective rights of the parties.

The decision was rendered on the merits, and not on a technical or procedural issue such as a

statute of limitations, a procedural defect in the pleadings, or other matters of form rather than

substance. As stated above, the Trustee elected not to participate in the state divorce court

---

the relief Marlese requested in her Motion for Summary Judgment Regarding Division of
Property, he decided not to request intervention."

[16]*Fowler v. Teynor*, 323 P.3d 594, 600 (Utah Ct. App. 2014), *reh'g denied* (May 8, 2014),
*cert. denied*, 333 P.3d 365 (Utah 2014) (quoting Restatement (Second) of Judgments § 27 cmt.
d).

[17]*State v. Sommerville*, 297 P.3d 665, 674 (Utah Ct. App. 2013) (quoting *State v.
Ruscetta*, 742 P.2d 114, 116 (Utah Ct. App. 1987)).

proceeding, and is estopped from asserting that the merits of his legal arguments were not considered by the state divorce court "The doctrine of res judicata serves the important policy of preventing previously litigated issues from being relitigated."[18] Litigating a factual issue once also preserves the integrity of the judicial system by preventing inconsistent judicial outcomes, and promotes judicial economy.[19] Accordingly, because the issue of ownership was decided by the state divorce court, this Court determines that the Trustee's suit is barred by issue preclusion.

### C.    Title Ownership

It is undisputed that the Defendant's name was never on the title to the Bonita Bay Property. While the record does not contain many facts about the purchase transaction or its funding, it appears the purchase was concluded between two individuals, the Debtor as buyer and his secretary as seller. It appears that the Defendant expected to be added to the title of the house shortly thereafter, which is why she signed a paper when the Debtor told her that he would put her on the title to the Bonita Bay Property. Instead, the Defendant had unknowingly signed a quit-claim deed for another property, which the Debtor had notarized later when she was not present. The Defendant was never on the title to the Bonita Bay Property, although after she discovered the situation, her divorce attorney recorded a Notice of Interest, declaring her right to an ownership interest in it. In effect, the Defendant was defrauded by her then husband.

---

[18]*Snyder v. Murray City Corp.*, 73 P.3d 325, 332 (Utah Ct. App. 2003).

[19]*See Gudmundson v. Del Ozone*, 232 P.3d 1059, 1067 (Utah 2010).

13

The Divorce Court Property Division did not find title ownership to be a bar to concluding that the Bonita Bay Property was marital property. The divorce court ruled that "Although title to the Bonita Bay Property was solely in [the Debtor's] name, the home was marital property in which both spouses had an interest at the time the petition in this case was filed and also at the time of [the Debtor's] subsequent bankruptcy petition."[20] As a Conclusion of Law, the divorce court held that "[the Debtor's] bankruptcy petition did not divest Defendant of her equal ownership interest in the Bonita Bay Property."[21] The divorce court concluded that, "The Bonita Bay Property was marital property in which each party had an equal interest."[22]

From the plain language of the divorce court's ruling, the divorce court found that the Debtor and Defendant were equal owners of the Bonita Bay Property, despite the Debtor being the only one on the title at the time the divorce petition was filed due to the Defendant's substantial contribution to purchasing, maintaining and otherwise contributing to the home.

Despite this ruling, the Trustee continued to advocate that title ownership should override the Divorce Court Property Division.

### D.    Bankruptcy and Property Divisions

The Trustee argued that the "Defendant asked the divorce court to classify the Bonita Bay house as marital property and to equitably divide all marital property and did not ask the divorce

---

[20]Divorce Court Property Division, Findings of Fact at paragraph 28, available at Dkt. No. 62 as Exhibit A.

[21]*Id.* Conclusions of Law at paragraph 9.

[22]*Id*., Final Judgment at paragraph 7.

court to rule that Defendant owned the Bonita Bay property."[23] This argument turns on the

assumption that finding assets to be marital property is a legal fiction that has no bearing on

actual ownership of the property in another context, such as bankruptcy proceedings.

The Court disagrees with the Trustee's characterization. The ownership of the Bonita Bay

Property in January 2011 was at issue in the divorce case, and when the Utah divorce court

determined that the Bonita Bay Property was marital property, it answered the question of

ownership. A divorce court is given authority to determine whether property is owned separately

or together, and then to determine who owns the property once the divorce is final. If property is

not "marital property" then it is "separate property." The divorce court found that the Bonita Bay

Property was marital property, not the Debtor's separate property. There is no third category for

property that is marital property but is owned solely by one spouse.

The above analysis relies principally on the findings and conclusions of the state Court

after the stay was lifted. The Court believes that the opportunity for the Trustee to participate

satisfies the complete, full and fair litigation element of issue preclusion, however, in the event

that issue preclusion may not apply because the 'complete, full, and fair litigation' element of the

test may not be met by a decision rendered on an unopposed motion for summary judgment, the

Court will rule on the merits of the Trustee's argument below and submits the following as an

alternative basis to support the Court's decision.

---

[23]Supplemental Briefing from the Trustee, Dkt No. 60 on p. 12.

The Trustee relies heavily on this Court's previous decision, *In re Harrell*,[24] for his argument that legal title ownership of record determines ownership of the property for bankruptcy purposes. This Court concludes that the facts in *Harrell* are distinguishable from this proceeding. The debtor in *Harrell* filed for bankruptcy more than a year before divorce proceedings were initiated, which is the reverse from the sequence of events in this proceeding. In *Harrell,* the debtor claimed on his schedules that he owned the house in fee simple, when in reality, both he and his wife were on the title to the house when the bankruptcy was filed. The divorce court awarded the house to the debtor. The bankruptcy trustee sought to sell the house and pay the debtor his $20,000 homestead exemption, but not pay anything to his ex-spouse. This Court held that the bankruptcy estate held only a half interest in the house, because the debtor owned only a half interest on the date the bankruptcy petition was filed. "[T]hus, the Court determines that under Utah law a debtor spouse is held to own only property to which he or she holds legal title at the time of filing for bankruptcy relief."[25] The Court went on to state, "Until and unless a state court enters a divorce decree dividing marital property, the debtor cannot be said to have an interest in property unless he or she had legal title to that  property."[26] Accordingly, the Court believes that the decision in this proceeding is consistent with *Harrell*.

Title to the Bonita Bay Property was not held by either the Debtor or the Defendant at the time the bankruptcy petition was filed which distinguishes this matter a bit more from the facts in

---

[24]2007 WL 2986130 (Bankr. D. Utah 2007).

[25]*In re Harrell*, 2007 WL 2986130, at *2 (Bankr. D. Utah 2007).

[26]*Id.* at *3.

16

*Harrell*. Title to the Bonita Bay Property had been held by a third party purchaser for about six months before the Debtor's bankruptcy estate was created. That may be a difference without a distinction here. What is relevant is the parties rights as of the date of the petition in the Bonita Bay Property's sales proceeds. This Court is persuaded that it must follow state law for the determination of property rights.[27]  Further, the Court is persuaded that following Utah law, those proceeds were subject to equal claims of the Debtor and the Defendant.

This Court confirmed the divorce court's authority to grant property ownership rights in the *Harrell* case when it held that: "A divorce court has authority under its equitable powers to alter this arrangement [referring to title ownership], but until a divorce decree is entered one spouse does not have ownership to property titled in the other spouse."[28] It follows from this reasoning that once a divorce decree is entered, the court's decree may grant a spouse ownership of property formerly titled in the other spouse. The Court does not believe there is anything in the language of *Harrell* that suggests a spouse simply becomes a creditor of the marital estate, with a claim on its assets but no ownership of the assets.[29] The divorce decree vests an ownership

---

[27] *See Butner v. United States,* 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").

[28] *Harrell*, 2007 WL 2986130, at *2.

[29]The Trustee has argued that an ex-spouse is a creditor of the marital estate rather than a property owner. This argument is based on language from *Bradford v. Bradford*, 993 P.2d 887 (Ct. App. Utah 1999), which involved the Uniform Fraudulent Transfer Act. The court in *Bradford* held that the husband was a creditor of his wife "in that he has a claim to the real property" which the wife had fraudulently deeded to her son. This language did not create a marital estate and establish the spouses as creditors of each other, as the Trustee suggests. Instead, it acknowledged that the husband was a creditor under the Uniform Fraudulent Transfer Act with respect to a specific parcel of property.

interest in property in the spouse to whom the property is awarded. "A trial court has

considerable discretion concerning property [division] in a divorce proceeding, thus its actions

enjoy a presumption of validity."[30] This Court independently finds and concludes that the Bonita

Bay Property and its proceeds should be equitably divided.

Besides principles of comity that make one court reluctant to supplant the decision of

another court, significant policy concerns also support the conclusion that a property division in a

divorce should be treated as determinative in a subsequent bankruptcy.

### E.     Policy Concerns

The intersection of family law and bankruptcy law is already a difficult intersection due

to conflicting policy concerns. The Court has been unable to find a case in Utah or the Tenth

Circuit in which a Trustee challenged a property settlement in a divorce as a preference or

fraudulent transfer. When looking further afield, the Court found a very small number of cases,

characterized by cautious judges and trustees who did not succeed.

In side-stepping the minefield of reexamining and redetermining the parties' interests in

marital property, Judge Yacos of the bankruptcy court in New Hampshire illustrated the same

when he commented on "the difficult question of trying to reconcile the conflicting policies of

the Bankruptcy Code and the family law."[31] The policy of the Bankruptcy Code is to expansively

interpret property rights so as to maximize the amount of assets in the debtor's estate for the

---

[30]*Kimball v. Kimball*, 217 P.3d 733, 741 (Ut. Ct. App. 2009).

[31]*In re Sorlucco*, 68 B.R. 748, 753 (Bankr. D.N.H. 1986).

benefit of creditors. The policy of Utah family law in a divorce proceeding is to favor the

equitable distribution of marital assets. This same policy is contained in § 30-3-5(1) of the Utah

Code, as well as in case law.

> 'The overarching aim of a property division, and of the decree of which it and the alimony award are subsidiary parts, is to achieve a fair, just, and equitable result between the parties.' Thus, by legislative enactment and our long-standing precedent, Utah has an interest in ensuring that marital assets are fairly and equitably distributed during divorce and that divorcing spouses both retain sufficient assets to avoid becoming a public charge.[32]

Because of Utah's strong policy interest in accommodating a fair and equitable division

of property in a divorce, this Court is hesitant about expanding a Trustee's powers to challenge a

property division. The Trustee's argument that the record legal title owner of the property is the

owner of the property for bankruptcy purposes, regardless of whether it is declared to be marital

property by a divorce court, would in this Court's opinion, undermine the finality of property

settlements in myriad situations.[33]

When faced with balancing these competing policy concerns, the bankruptcy court in the

District of Columbia concluded, "If the divorce decree is not collusive and divides the property in

---

[32]*Dahl v. Dahl*, ___ P.3d ___, 794 Utah Adv. Rep. 5, 2015 WL 5098249 at *5 (Utah 2015) (quoting *Noble v. Noble*, 761 P.2d 1369, 1373 (Utah 1988)).

[33]Consider a hypothetical situation in which a divorcing husband and wife own a home together, and are both on the title. After they file for divorce but before the divorce is final, the husband files for bankruptcy. Assume that after the stay is properly lifted, the divorce court awards the marital home to the wife. Pursuant to the property division, the husband signs a quit-claim deed, giving the wife sole ownership of the home. Under the Trustee's reasoning, a trustee could argue that the quit-claim deed effected a preferential transfer, since according to title ownership before the husband filed bankruptcy, the wife only owned half the home. This would defeat the family law policy of awarding each spouse an equitable share of marital assets.

19

accordance with considerations allowed by state law, it determines the interests of the parties in

the property."[34] This Court also declines to disturb a property division in a divorce when there is

no evidence to suggest that the former spouses colluded with each other to defraud creditors. The

undisputed facts do not suggest that any such collusion was present in this case.

## VI.    CONCLUSIONS OF LAW

The Divorce Court Property Division found the Bonita Bay Property to be marital

property, with each spouse owning one-half interest. Thus, when the Defendant received her

share of the proceeds from the sale of the Bonita Bay Property, she was not receiving a "transfer

of an interest of the debtor in property" under 11 U.S.C. § 547(b), but received her own property.

Thus, the threshold issue of a preferential transfer is not met.

Alternatively, based on the undisputed facts of the matter, the Court concludes that the

Debtor and the Defendant were owners of one-half each of the Bonita Bay Property and/or the

sales proceeds derived therefrom under principles of Utah law as of the date of the petition

initiating this bankruptcy case. The decision is *Harrell* is either distinguishable or consistent with

this decision, and to the extent it is interpreted any differently, this Court elects not to follow its

holding.

There are no genuine issues of material fact in this case. The Defendant is entitled to

judgment as a matter of law. The Trustee's motion for summary judgment will be DENIED with

prejudice. The Defendant's cross-motion for summary judgment will be GRANTED.

---

[34]*Webster v. Hope (In re Hope)*, 231 B.R. 403, 417 (Bankr. D.D.C. 1999).

20

A separate order will be entered.

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

David C. West
321 North Mall Drive, Suite 0-202
St. George, UT 84790
>	*Chapter 7 Trustee*

Reid W. Lambert
David R. Williams
Woodbury & Kesler
525 East 100 South
Suite 300
P.O. Box 3358
Salt Lake City, UT 84102
>	*Attorneys for Trustee*

Brent D. Wride
Ray Quinney & Nebeker
36 South State Street #1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
>	*Attorney for Defendant*